IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| GREATER MISSOURI MEDICAL PRO-CARE PROVIDERS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 3:14-CV-05028-MDH ) |
| THOMAS E. PEREZ, sued in his official capacity, Secretary, et al. | ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiff Greater Missouri Medical Pro-Care Providers, Inc.'s ("Greater Missouri") Motion for Summary Judgment (Doc. No. 16) and Defendants Thomas Perez, sued in his official capacity as Secretary of the Department of Labor, the United States Department of Labor, the Administrator of the Department of Labor and the Wage and Hour Division's (collectively "the DOL") Motion for Summary Judgment (Doc. No. 18).

## BACKGROUND

**1. The Immigration and Nationality Act – H-1B Classification**

This case comes before the Court for review of the Department of Labor Administrative Review Board's ("ARB") Order regarding Greater Missouri's alleged violations of the H-1B provisions of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1101, *et seq*. The INA contains an H-1B classification which can be granted to an alien who:

> will perform services in a specialty occupation which requires theoretical and practical application of a body of highly specialized knowledge and attainment of a baccalaureate or higher degree or its equivalent as a minimum requirement for entry into the occupation in the United States, and who is qualified to perform services in the specialty occupation

1

> because he or she has attained a baccalaureate or higher degree or its equivalent in the
> specialty occupation.

*Id.,* 8 C.F.R. § 214.2(h)(4)(i)(A)(1). In essence, the H-1B visa program allows professionals from other countries to work in the United States on a temporary basis. *Cyberworld Enterprise Technologies, Inc. v. Napolitano,* 602 F.3d 189, 192 (3rd Cir. 2010). In these employment scenarios, employers who voluntarily participate in the program are required to file certain applications, labor condition applications or LCAs, with the DOL and the Department of Homeland Security in order to obtain H-1B visas for their employees. *Id.* As part of the application process, the employer is required, among other things, to guarantee specified prevailing wages and working conditions. 8 U.S.C. § 1182(n)(1); 20 C.F.R. §§ 655.731-733.

Employers are required to pay H-1B employees the prevailing wage listed on the LCA as soon as they "enter into employment." 20 C.F.R. § 655.731(c)(6)(i). "Enter into employment" is defined as when "he/she first makes him/herself available for work or otherwise comes under the control of the employer." 20 C.F.R. § 655.731(c)(6)(i). Therefore, it includes time spent waiting for an assignment, training, interviewing, meeting with a customer, or studying for a licensing examination. *Id.* Employers are also required to pay the prevailing wage to H-1B employees who are in a "nonproductive status due to a decision by the employer." 20 C.F.R. § 655.731(c)(7)(i).[1] This includes any time there is a lack of work or even a lack of permit or license. *Id.*

Under the INA, employers are not permitted to require the H-1B employee to pay a penalty for ceasing employment prior to an agreed upon date and shall not make deductions from their wages to collect any such penalties. 20 C.F.R. § 655.731(c)(10)(i). However, the employer is permitted to receive bona fide liquidated damages from an H-1B employee who

---

[1] The nonproductive status of an H-1B employee is also referred to as "benching."

ceases employment prior to an agreed upon date.[2]  *Id.*  Finally, employers are not allowed to deduct any attorney fees or costs from an H-1B employee's wages for functions that the employer is required to perform, such as the preparation and filing of an LCA or H-1B petition. 20 C.F.R. § 655.731(c)(9)(iii)(C).

### 2. Greater Missouri

Greater Missouri provides physical and occupational therapists for hospitals, nursing homes and other similar facilities.[3]  Many of Greater Missouri's employees have come to the United States from the Philippines as part of the H-1B program.  These employees signed employment contracts both before they entered the U.S. and again after arriving in the U.S. to work.  The employment agreements contain provisions that require the H-1B employees to repay Greater Missouri for certain expenses and also damages if they cease employment before the end of the agreed upon period.

Upon arrival, Greater Missouri's H-1B employees were provided apartments by Greater Missouri while they studied for their licenses and attended training.  During the time the H-1B employees were studying and attending training they received a stipend of $50 a week.  However, once they passed their exam, or received their license, Greater Missouri began paying them their full salaries.  Greater Missouri also made deductions from the H-1B employees' wages for attorney's fees and other fees associated with their LCAs.

---

[2] If an employer intends to collect "bona fide liquidated damages" the employer must first show a number of regulatory requirements have been met.  20 C.F.R. § 655.731(c)(9)(iii) and 20 C.F.R. § 655.731(c)(10)(i)(B).

[3] The facts presented by the parties are not in dispute.  Greater Missouri admits that it did not pay for the time the H-1B employees were studying for licenses or training.  R03578.  Greater Missouri further admits it deducted fees from H-1B wages for LCAs and attorneys' fees. R03579.

3

### 3. Procedural History

This case originated on or about June 23, 2006 when Alena Gay Arat, a therapist from the Philippines, submitted an H-1B complaint against Greater Missouri. Arat made several allegations, including: Greater Missouri failed to pay her and other H-1B therapists the wages required under its LCA while they were gaining their licenses; she was required to pay all fees, including attorney's fees, related to her H-1B visa; she was given work not identified in her contract; and she was threatened with a monetary penalty for ending her employment early.[4] R03435-R03437. The complaint was forwarded to the Wage and Hour Division who completed a form describing the alleged H-1B violations as follows: employer failed to pay H-1B worker(s) for time off due to a decision by the employer; employer made illegal deductions from the H-1B worker's wages; employer required H-1B worker(s) to pay all or part of filing fee; and employer imposed an illegal penalty on H-1B worker for ceasing employment prior to an agreed upon date. R03428.

The Wage and Hour Division found reasonable cause to initiate an investigation under the INA based on Arat's complaint. Therefore, Greater Missouri received a letter from the Wage and Hour Division dated August 4, 2006, that stated "The Wage and Hour Division is responsible for conducting investigations to determine compliance with the H-1B Labor Condition Application (LCA) provisions of the Immigration and Nationality Act (INA)." The letter further stated: "This is to notify you that your firm has been scheduled for investigation

---

[4] Greater Missouri contends the complaint only raised the issue regarding termination of employment. The Court believes Greater Missouri bases this argument on the fact Arat's two page letter includes the following question – "Is it legal to hold paycheck just for the reason of breaching the contract?" However, a review of Arat's letter reveals a long list of issues with regard to Arat and other employee's H-1B status with Greater Missouri. The entire letter was forwarded to the Wage & Hour Division for determination of whether reasonable cause existed for an investigation of violations under the INA.

under those provisions." The initial investigation period covered by the investigation was June 23, 2005 through June 22, 2006. R03195. The investigator assigned to this complaint notified Greater Missouri of the date she planned to visit and also provided Greater Missouri with a list of records it was required to make available for her inspection.

Based upon the findings of the investigation, the Administrator issued a determination that Greater Missouri had committed violations of the INA. Specifically, the Administrator determined the following violations – failure to pay wages as required; required or attempted to require a penalty for ceasing employment prior to agreed upon date; and failure to maintain required documentation. R0001. The original determination found back wages owed in the amount of $372,897.93 to 44 H-1B workers. *Id.* The Administrator subsequently amended the original determination and found back wages in the amount of $382,889.87 to 45 employees.[5] R03566.

Greater Missouri requested a hearing before an Administrative Law Judge (ALJ). Greater Missouri's appeal, in part, challenged the scope of the Administrator's investigation, the statute of limitations period that applies to the damage award and the liquidated damages issue. The ALJ issued an Order on October 23, 2009, granting partial summary judgment to the Administrator, finding there was no genuine issue of fact that Greater Missouri did not pay its H-1B employees during nonproductive employment and that it illegally deducted expenses from H-1B employee wages for attorney fees and LCA fees. R03567. After an extensive discovery and briefing period,[6] the ALJ issued a lengthy ninety-seven page Decision and Order upholding most

---

[5] The amendment came after Greater Missouri had already appealed the determination. However, the ALJ accepted the amended determination which was made part of the appeal.
[6] Plaintiff requested a hearing before the ALJ in June 2008. The parties conducted discovery and submitted briefing for over 2 years. The ALJ proceedings took place July 28-29, 2010, and post

5

of the Administrator's findings. The ALJ's decision held: (1) Greater Missouri owed 40 H-1B employees back wages for uncompensated "benching" time; (2) Greater Missouri did not violate the INA by collecting, or attempting to collect damages from its employees for early termination of employment; (3) Greater Missouri violated the INA by failing to satisfy the regulatory requirements of 20 C.F.R. § 655.731(c)(9) when it withheld final paychecks from four employees; and (4) Greater Missouri violated the INA by deducting expenses from H-1B employees' paychecks for extension fees and attorney fees. RO3564-R03660.

The ALJ found Greater Missouri liable for $354,486.47, less than the amount found due by the Administrator. R03657-R03659. This total amount was based on the finding that 40 H-1B employees were owed $338,042.19 for benching violations; 17 H-1B employees were owed $8,160.00 for illegal deduction of fees; and 4 H-1B employees were owed $8,284.23 for illegal withholding of final paychecks. *Id.*

Greater Missouri then petitioned the ARB for review of the ALJ's decision. R03662. Greater Missouri argued that the ALJ erred in applying the law. Specifically, Greater Missouri argued the aggrieved party complaint limited the investigation by the Wage and Hour Division; a twelve-month statute of limitations should have been applied; and the award of pre and post judgment interest was not supported by the INA.

The ARB affirmed in part, and reversed in part, the ALJ's decision. Specifically, the ARB upheld the ALJ's finding that the Wage and Hour investigation was not limited solely to the allegations in the aggrieved party complaint. The ARB also upheld the ALJ's evidentiary rulings and award of pre and post judgment interest. The ARB reversed the ALJ's award based on any discrete violations that occurred outside a twelve-month period prior to the filing of the

---

hearing briefs were not completed until October 2010. The ALJ issued her Decision and Order on October 18, 2011.

original complaint. R4057-R4094. The ARB's Final Decision and Order found Greater Missouri liable for only $123,230.13. R4081-R4082. This total amount was based on the finding that 8 H-1B employees were owed $106,785.85 for benching violations (the ARB reversed the ALJ with regard to 32 H-1B employees, reducing the ALJ's award for benching violations by $231,256.34); 17 H-1B employees were owed $8,160.00 for illegal deduction of fees; and 4 H-1B employees were owed $8,284.23 for illegal withholding of final paychecks. *Id.*

Greater Missouri initiated this action seeking judicial review of the ARB's Final Decision and Order. As previously stated, it is undisputed Plaintiff made improper deductions from several H-1B employee paychecks for attorney and LCA fees; did not pay any of its H-1B employees for training time; and withheld final paychecks from certain employees all in violation of the INA. Nonetheless, Plaintiff maintains it should be liable only to Arat, and only in the amount of $690 for deductions for USCIS fees and attorneys' fees, and $1,964.59 for amounts withheld from her paycheck. Greater Missouri's pending Motion for Summary Judgment moves the Court to set aside the decision of the ARB as to all employees other than Arat, the original aggrieved complainant. Defendants move for summary judgment upholding the ARB's Final Decision and Order.

## LEGAL STANDARD

**1. Summary Judgment Standard**

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 247 (1986).  Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial.  *Id.* at 248.  The parties' motions for summary judgment seek a determination of plaintiff's appeal from the ARB's administrative decision regarding the H-1B violations.  The material facts are undisputed and are set forth in the record.

### 2. Standard of Review

The Administrative Procedures Act sets out the standard for this Court's review of the ARB's Final Decision and Order.  *See,* 5 U.S.C.A. § 701, *et seq.*  Under the Administrative Procedures Act, the Court shall "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.  The reviewing court will not set aside agency action unless the action is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency.  Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."  *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962).  In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Bowman Transp. Inc. v. Arkansas-Best Freight System, et al.,* 419 U.S. 438, 442 (1974).

Here, the Court reviews the ARB's Final Decision and Order with regard to Greater Missouri's LCA violations under the INA.  The ARB's decision applies the INA statutes and

regulations to the scope of the Wage & Hour Division's investigation of Greater Missouri. When legal conclusions involve the interpretation of an Act, we must "give effect to the unambiguously expressed intent of Congress." *Id., citing, Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843 (1984). If the Act "is silent or ambiguous with respect to the specific issue," we defer to "a reasonable interpretation made by the administrator of [the] agency." *Id.*

In reviewing the DOL's interpretation of a statute it administers, the Court first looks to "whether Congress has directly spoken to the precise question at issue." *Maverick Transp., LLC v. U.S. Dep't of Labor, Admin. Review Bd.,* 739 F.3d 1149, 1154 (8th Cir. 2014), *citing, Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "If ... Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Id.* Instead, the Court reviews "whether the agency's [interpretation] is based on a permissible construction of the statute." *Id., see also, In re Lyon County Landfill v. United States EPA,* 406 F.3d 981, 983 (8th Cir. 2005)(stating a court "will defer to an agency's reasonable interpretation of a statute it is charged with administering if the statute is ambiguous, or the interpretation is consistent with the plain meaning of the statute"). "Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. at 844.

## ANALYSIS

**1. Investigative Authority of the Administrator under the INA**

Greater Missouri argues the ARB's Final Decision and Order should be set aside because it erred in finding the Administrator's investigation into H-1B employees, other than Arat, was within its statutory authority. The Defendants argue the decision should be upheld because plaintiff has failed to show the ARB's decision was arbitrary and capricious or otherwise contrary to law.

Greater Missouri's arguments are based on the scope of investigative power given to the Department of Labor under the INA. It is undisputed, the Administrator is given the power to investigate and enforce the statutory requirements of LCAs under the INA. 8 U.S.C. § 1182(n); 20 C.F.R. § 655.800. "The Administrator, either *pursuant to a complaint or otherwise*, shall conduct such investigations as may be appropriate ….. and gather such information as deemed necessary by the Administrator to determine compliance regarding the matters which are the subject of the investigation." 20 C.F.R. § 655.800. (*emphasis added*).

The INA states, "the Secretary shall establish a process for the receipt, investigation, and disposition of complaints" under the Act. It further states "Complaints may be filed by any aggrieved person or organization (including bargaining representatives)" and provides for a 12 month statute of limitations regarding any failures or misrepresentations under the Act. 8 U.S.C. 1182(n)(2)(A). If the Secretary finds there is reasonable cause to believe a violation has occurred she shall conduct an investigation. *Id.*

The regulations set forth who may file a complaint and how it is processed. The regulations state (1) no particular form of complaint is required; (2) the complaint shall set forth sufficient facts for the Administrator to determine whether there is reasonable cause to believe

that a violation has been committed. The determination shall be made within 10 days of the date the complaint is received; and (3) if the Administrator determines that an investigation on a complaint is warranted, an investigation shall be conducted and a determination issued within 30 days of the filing of the complaint. 20 C.F.R. § 655.806(a).[7] A complaint must be filed not later than 12 months after the latest date on which the alleged violation(s) were committed. *Id.*

Further, it is noteworthy that the INA provides more than one avenue for the Secretary to initiate an investigation for LCA violations. For example, the Secretary may, on a case-by-case basis, subject an employer to random investigations if the employer has committed a willful violation of the INA in the past. 8 U.S.C. § 1182(n)(2)(F). The Secretary may also initiate an investigation if there is reasonable cause to believe noncompliance.[8] 8 U.S.C. § 1182(n)(2)(G)(i). Another example of the Secretary's investigatory authority is receipt of specific credible information from a source who is likely to have knowledge of the practices, employment conditions, or compliance with LCA application requirements. 8 U.S.C. § 1182(n)(2)(G)(ii).[9] Finally, as set forth above, the Secretary may initiate an investigation of complaints filed by any aggrieved person or organization. 8 U.S.C. § 1182(n)(2)(A).

Greater Missouri's first argument is that the Administrator did not have authority to extend the investigation beyond Arat's complaint and therefore, the ARB erred in upholding the H-1B violations. In fact, Greater Missouri argues the only issue that Wage & Hour had the authority to investigate was Arat's question about the termination of her employment. After

---

[7] *But see also, Cyberworld Enterprise Technologies, Inc. v. Napolitano,* 620 F.3d 189, 196 (3rd Cir. 2010)(citing Supreme Court precedent that "if a statute does not specify a consequence for noncompliance with statutory timing provision, the federal courts will not in the ordinary course impose their own coercive sanction.").
[8] The Act provides conditions for this type of investigation, such as personal certification that reasonable cause exists and approval of the investigation.
[9] The Act also provides requirements for this type of investigation. However, the Secretary may withhold the identity of the source from the employer.

careful review of the INA and the ARB's decision on this issue, the Court finds the ARB's Final Decision and Order was not arbitrary and capricious, or in conflict with the law, and should be upheld.

First, upon the filing of Arat's complaint, the Wage & Hour Division gave Greater Missouri notice of its investigation. Greater Missouri received a letter dated August 4, 2006, that stated: "The Wage and Hour Division is responsible for conducting investigations to determine compliance with the H-1B Labor Condition Application (LCA) provisions of the Immigration and Nationality Act (INA). This it to notify you that your firm has been scheduled for investigation under these provisions." R03195. The letter further requests information pertaining to *all* Greater Missouri's H-1B employees. From the initial letter, Greater Missouri was put on notice that it was being investigated for H-1B violations pertaining to all its employees. Arat's complaint itself referenced possible violations involving Greater Missouri employees other than herself.

The ARB's decision reasons that the statutory provisions do not restrict the scope of H-1B investigations to allegations contained in a single aggrieved party complaint. "Once reasonable cause is found based upon the claims of one H-1B employee, the Administrator has the discretionary authority to expand that investigation to other claims or other employees not contained within the four corners of the original document." R04067. Further, the regulations do not dictate the scope of the investigation once reasonable cause is found. R04064. This Court finds nothing in the statutes or regulations to contradict the reasoning of the ARB. In fact, the INA does not provide specific direction for the investigations and the ARB's analysis is reasonable in light of the history of the H-1B program and is consistent with the language of the statutes and regulations.

Greater Missouri also argues it was somehow prejudiced by the manner in which the investigation took place.  However, it provides no authority to substantiate this argument.  Since the violations are admitted not just in relation to Arat, but also with regard to other Greater Missouri employees, the Court is unable to find any support for this claim.  The ARB's dissent argues that Greater Missouri was not given notice of the alleged violations and did not have an opportunity to respond to the complaints under 8 U.S.C. § 1182(n)(2)(G)(ii).  This Court disagrees.  Here, Greater Missouri was aware of the investigation of alleged H-1B violations, participated in on-site interviews, produced records for all its H-1B employees and had more than adequate opportunities to respond to the Wage and Hour Division.  Again, the violations are not contested by Greater Missouri, so it is unclear what benefit Greater Missouri claims it would have received from any greater opportunity to respond.

Further, the Court is also unpersuaded by Greater Missouri's argument that Arat only raised claims on her own behalf and not on behalf of others.  While it is arguable the complaint was not entirely clear, as it was written by Arat, it is certainly reasonable for the ARB to hold that the complaint did in fact raise these allegations.  Arat's letter states her employer "made me and the rest of us" stay in company owned apartments while studying and that they only received $50 per week during that time.  The letter generally describes the working conditions and terms of employment of both Arat, and other H-1B employees.

Plaintiff relies on the ARB's dissent to argue the DOL's investigation was conducted under 8 U.S.C. § 1182(n)(2)(G)(ii) and 20 C.F.R. § 655.807.  Plaintiff argues because the Administrator did not conduct its investigation under these provisions of the INA, it should not be allowed to find violations beyond Arat's complaint.  The ARB disagreed.  Further, the dissent

13

Case 3:14-cv-05028-MDH   Document 25   Filed 10/24/14   Page 13 of 18

stated "I am mindful of the fact that my opinion may be at odds with what appears to be long-standing administrative practice."[10]

Plaintiff's argument that the investigation was done under the "reliable source" provision would require the Administrator, among other things, to provide notice to the employer of the alleged violations and give the employer an opportunity to respond. The record before the Court indicates Greater Missouri received a letter notifying it of the investigation. Further, Greater Missouri responded to the investigation with documents and in meetings with the investigator.

After reviewing the record, the Court finds the ARB's decision is not arbitrary and capricious nor contrary to the INA. As the ARB's decision noted - the regulations state "the Administrator, either pursuant to a complaint, or *otherwise,* shall conduct investigations *as may be appropriate* and … *as deemed necessary* by the Administrator to determine compliance…" 20 C.F.R. § 655.800(b)(*emphasis added*). R04064. Further, "given Arat's detailed allegations regarding a number of different serious LCA violations against her and other H-1B therapists working for Greater Missouri, it was entirely appropriate for Wage and Hour to find reasonable cause to investigate…" R04063. Greater Missouri's argument that the ARB's interpretation of the INA is plainly erroneous or that the ARB's decision is not a fair and considered judgment on the issue is rejected. As the ARB further noted "neither the statute nor the regulations dictate the exact contours" of an investigation once reasonable cause has been found. R04063. The Court finds the ARB's Final Decision and Order is both reasonable and permissible under the statute and regulations and should be affirmed.

---

[10] However, the dissent further stated "the policy respecting precedent in statutory interpretation 'does not demand that recognized error be compounded indefinitely.'"

14

## 2. Timeliness of Claim for Violations of the INA

Next, Greater Missouri argues the Court should set aside the ARB's decision awarding backpay to eight employees for "benching" violations because the aggrieved party complaint was untimely. Greater Missouri contends the Administrator did not have authority to investigate these allegations and therefore the ARB's decision upholding any such award is not in accordance with the law.

Greater Missouri's appeal of the ALJ's decision to the ARB argued that the backpay awards were untimely. The ARB agreed with Greater Missouri to the extent any claims fell before June 22, 2005 (Arat's Complaint was filed June 22, 2006). Therefore, this included Arat's benching violations because she was properly paid beginning May 6, 2005. As a result, the ARB reversed the ALJ and held any claim for benching violations were time barred with regard to Arat. The ARB further agreed with Greater Missouri that any additional claims based on allegations prior to June 22, 2005 were untimely and should not be upheld. The ARB found approximately 32 benching violation claims were therefore untimely, and reversed each of those awards. However, the ARB found that 8 of the benching violations occurred within the relevant time frame and therefore were not time barred. The ARB upheld those awards. Greater Missouri now argues the ARB's decision with regard to these 8 employees is arbitrary and capricious or contrary to law.

Greater Missouri believes if Arat's claim, the aggrieved party complaint, was untimely then jurisdiction does not exist to investigate any other violations. The INA states "no investigation or hearing shall be conducted on a complaint concerning such a failure or misrepresentation unless the complaint was filed not later than 12 months after the date of the

15

failure or misrepresentation, respectively." 8 U.S.C. § 1182(n)(2)(A).[11] Based on the applicable statute, the ARB held that any LCA violations which occurred more than one year before Arat filed her complaint are not actionable. However, any violations that occurred during the 12 month period are timely and therefore should be upheld.

The ARB's decision holds that once Arat filed her complaint, and the Wage & Hour Division began its investigation, it had authority to investigate claims that pertained to the relevant time period. Therefore, the 8 employees who fell within that time period were permitted to recover for Greater Missouri's violation of the INA. Simply because Arat's claim was found to be untimely, it did not void the Wage & Hour Division's investigative authority.

Greater Missouri does not provide any precedent that the ARB's decision to uphold these violations is contrary to law. As a result, a review of the record and applicable statutes and regulations establishes that the ARB's analysis of the timeliness of claims was reasonable under the INA. There is no evidence before the Court that the ARB's decision was arbitrary and capricious or contrary to the law and therefore it is affirmed.

### 3. Pre and Post Judgment Interest

Finally, Greater Missouri argues the ARB's award of pre judgment and post judgment interest should be set aside as arbitrary and capricious. As set forth herein, this Court's review of the ARB's decision under the arbitrary and capricious standard is narrow. This Court will not substitute its own judgment for that of the agency. Rather, it has reviewed the award of pre judgment and post judgment interest to determine whether the ARB based its decision on relevant factors and whether there was a clear error of judgment in the decision.

---

[11] Similarly, 8 U.S.C. § 1182(n)(2)(G)(vi) establishes a 12 month statute of limitations for claims.

16

Case 3:14-cv-05028-MDH   Document 25   Filed 10/24/14   Page 16 of 18

Greater Missouri's argument for reversal of this award is based on the timing of this case. Greater Missouri states "the prejudice to an employer caused by the agency's unhurried and overbroad investigation and determination" was not considered. It further states it "should not singularly bear the brunt of the lengthy nature of these proceedings in the form of prejudgment or postjudgment interest." While it is true that this matter has been pending for over 8 years, Greater Missouri does not argue that pre judgment and post judgment interest are not authorized under the INA.

The INA statutes and regulations do not specifically provide for pre judgment or post judgment interest. However, the ARB decision notes that it has routinely awarded pre judgment and post judgment interest on awards in H-1B cases. The Final Decision and Order further notes that the rationale of compensating the aggrieved employee for loss of the use of his/her money applies equally under the statutes. It appears Greater Missouri concedes that interest is permissible under the statutes and regulations, and therefore instead argues that the case has taken too long and therefore it should not have to pay for the length of time the proceedings have drawn on.

The ARB declined to reduce the interest award based on Greater Missouri's argument. It further noted that the delay in the proceedings was not due solely to the Administrator, and certainly not the aggrieved parties to whom the interest is due. The Court has reviewed the record before it and finds the ARB's decision was not arbitrary and capricious with regard to the interest award. Further, the Court finds that the ARB's award was within the statutory framework of the INA and therefore not contrary to law. As such, the ARB's decision on pre and post judgment interest is affirmed.

## CONCLUSION

For the reasons set forth herein, the Court denies Plaintiff's Motion for Summary Judgment (Doc. No. 16) and grants Defendants' Motion for Summary Judgment (Doc. No. 18).

**IT IS SO ORDERED.**

DATED:     October 24, 2014

                                           */s/ Douglas Harpool*
                                           **DOUGLAS HARPOOL**
                                           **UNITED STATES DISTRICT JUDGE**